Upon the present trial plaintiff's counsel asked the witness Hunt, while questioning with regard to a statement he had made out of court to counsel:

"Did you also say something after the accident that you quit using one part of the track because it was bad, and that they would run on one track and had a cable to the cars on the other; that it was poorly built?

"Defendant's Counsel: Objected to, that it was an attempt to introduce facts occurring after the accident, and we ask the court to withdraw a juror."

The court declined to do that, but excluded the evidence.

These improper questions suggested to the jury in the strongest manner that the defendant after the accident recognized that the track was in a dangerous condition, and it put the defendant in a false position to have to object to and exclude such evidence. Much must be allowed for inadvertence and the overzeal of counsel; but when we consider the occurrences upon the former trial, there is not the same ground for charity that there might be if such occurrences were not in fact a substantial repetition of former incidents. Upon the former trial and upon this trial counsel had been warned that he was treading upon dangerous ground. In a case so evenly balanced, it is apparent that these occurrences must have had an influence upon the mind of the jury, and it is impossible to tell how far this verdict rests upon such suggestions.

The judgment and order are therefore reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except BETTS, J., who dissents.

---

### ROONEY v. BROGAN CONST. CO.

(Supreme Court, Appellate Division, Second Department. November 17, 1911.)

MASTER AND SERVANT (§ 280*)—DEATH OF BUILDING EMPLOYÉ—EVIDENCE— WEIGHT.

In an action for death of a building employé, caused by his stumbling and falling through an opening in the floor, verdict for plaintiff *held* against the weight of the evidence, on the theory that he assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 280.*]

Rich, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Margaret Rooney, as administratrix of John Rooney, deceased, against the Brogan Construction Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

See, also, 136 App. Div. 925, 120 N. Y. Supp. 1143.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

I. R. Oeland, for appellant.
Gilbert D. Lamb, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

JENKS, P. J.  I think that the judgment must be reversed, and a new trial must be granted, for the reason that the verdict was against the weight of the evidence.  The action for negligence is brought to recover damages for the death of plaintiff's intestate, who was at work for the contractors for the plastering in the defendant's incompleted building.  The building had been erected, and it had been inclosed.  For the purpose of lifting the materials to the ten floors, a temporary opening had been left in every floor, extending from a wall towards the middle of the floor, about 25 feet in length and about 5 feet wide.  A part of these openings was occupied by a hod hoist.  At the time of the casualty the floors were unfinished, and the spaces between the beams thereof were filled in by brick arches, on which were placed sleepers, to which the flooring was to be attached, and the spaces between the sleepers had been filled in with dark-colored cinders or ashes to within an inch or an inch and a half of the tops of these sleepers.  The intestate was employed to keep up the fires in certain movable stoves placed on the various floors to prevent the plaster from freezing.  About 6 p. m. of an evening in January, he and a fellow workman went about that work.  The only artificial light was given by two gasoline torches carried by them, respectively. When upon the ninth floor, the intestate crossed from the west to the east side of the building, and passed with his torch in hand within 1½ feet of this opening.  He took up a stove, and in attempting to carry it to the west side of the building he tripped or stumbled, and fell down the opening to his death.

The negligence assigned is noncompliance with section 20 of chapter 192 of the Laws of 1899, which in part provides:

"If elevating machines or hoisting apparatus are used within a building in the course of construction, for the purpose of lifting materials to be used in such construction, the contractors or owners shall cause the shafts or openings in each floor to be inclosed or fenced in on all sides by a barrier at least eight feet in height."

It appeared that none of these openings was protected.  The learned court instructed the jury in part, without exception, as follows:

"As I have stated, the flooring at this time was not covered with any boards.  At some places the sleepers projected an inch or an inch and a half, or perhaps a half an inch, above the ashes, and Rooney had been about the building, in various parts of it, and upon this ninth floor, at least, upon the night or day in question.  The hole was unguarded.  There was no 8-foot guard about it.  There was no guard of any kind about it, and Rooney had been in the building and about these openings which projected up through all the floors.  So that, if you find that the evidence in this case, whether the evidence of the plaintiff or the evidence of the defendant, is of sufficient weight to convince you that Rooney himself knew that the opening was unguarded, that the statute had not been complied with, and also that the floor was in the condition which I have indicated, and then continued working there at his post, he then assumed the risk of falling into the hole in passing by it or over it, even though he might have been guilty of any contributing negligence.  So upon this point I shall leave it to you, as a question of fact, to determine simply his knowledge.  Did he at the time know the hole was unguarded at a place where the floor was in the condition as it has been described by the witnesses, with the sleepers being some inches above the ashes, so that in passing over that the foot might trip and a person be caused to fall?  If he knew the fact and the condition, and continued to work there,

then the law says—not only the law of this state, but the law of every state that I have been able to look at since this case was started—that he assumed the risk of the employment."

The court, as requested by the learned counsel for the plaintiff, charged:

"I might ask your honor to charge that the burden of establishing assumption of risk is on the defendant.

"The Court: Yes; the burden is on the defendant, which means that when the case is closed the evidence as introduced in the entire case must satisfy you by a fair preponderance of the evidence accordingly, as I have already stated."

And the court, upon request of the learned counsel for the defendant, also charged:

"That it is not for the jury to determine whether or not he was assuming the risk at all, but it is the charge of your honor that, if they find and believe from the evidence that he knew of this condition, then as matter of law he did assume the risk, and he cannot recover in this case."

This instruction was not excepted to. I think that the evidence did not justify the conclusion that the plaintiff did not assume the risk. To quote from the opinion of Gray, J., writing for the Court of Appeals in this case (194 N. Y. 32, 86 N. E. 814):

"If the deceased knew of the opening and of the imperfect flooring, he must have appreciated the risk of a misstep, when passing too close to the former."

The evidence is that the intestate had been engaged in this particular work about four or five days. Conroy, one of the witnesses for the plaintiff, testifies that the work required the intestate to go upon every floor the laborers were working on, and that they had worked upon this ninth floor; that the duty of the intestate required him to look after the stoves every day; that he would start in the morning at 8 o'clock, and quit work generally at 5 o'clock; that such work would require him to be on the various floors at least twice a day, in the forenoon and in the afternoon; that the work would have required him to be on this ninth floor each day while they were working there.

Carlough, a witness for the plaintiff, testifies that the intestate was working there all that day from 8 until 6; that sometimes there were 6 to 10 stoves on each floor, according to the plastering done; that he saw the intestate on some of the floors that day in the daytime, and that the witness could see the slit in the floor every time he was on the floor; that the intestate would go around to all of the stoves on the floors; and that the witness could not help seeing the opening that day on every floor. He further testifies that the intestate would go around to all of the stoves on the floors; that if the stoves were on one side of the building, and then on the other, the intestate would have to cross over the building to go to them. He also testifies that he, with the intestate, was going up and down the floors working on the day of the casualty; that they were engaged all day in looking after the stoves; that they would go on various floors, whichever they thought there was a stove on that "would be needed to be fixed";

that he went all over the building, and that the intestate was with him at some time, and that the plaster was on each floor—a day's supply on each of the 10 floors.

It would seem to me that the duty of the intestate to visit these various floors from time to time in order to keep alive the fires in these stoves "necessarily required him to know the conditions of each floor," to quote the language of Gray, J., in the opinion of the Court of Appeals. And it must be remembered that the evidence is not that the intestate stepped into this opening as if it was a pitfall unseen, but that he stumbled or tripped and then fell into the opening—an occurrence consistent with his knowledge of the existence thereof.

The judgment and order must be reversed, and a new trial must be granted; costs to abide the event. All concur, except RICH, J., who dissents.